JOSEPH W. WOODS & SONS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9156.    Promulgated October 10, 1927.

 1. The evidence shows that $4,200 paid by petitioner to one of its employees was additional compensation for services rendered. The amount was therefore a proper deduction from gross income.

 2. The evidence in this proceeding is not sufficient to show that the Commissioner's disallowance of a certain portion of the cost of remodeling a building as an ordinary and necessary expense was erroneous.

*Benjamin E. Messler, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

The Commissioner determined a deficiency in income tax of $1,698.49 for the calendar year 1919. Petitioner claims that the Com-

missioner erred in refusing to allow (1) a deduction of $4,200 paid to one of its employees as additional compensation for services rendered during the taxable year, and (2) a deduction of $5,514.10 as an ordinary and necessary expense for the taxable year representing repairs to a residence building situated on a tract of land purchased by petitioner during the year 1919.

Two other errors assigned by petitioner relating to the refusal of the Commissioner to allow certain additional depreciation, and a loss in respect of certain stock were withdrawn at the hearing.

The position of the Commissioner is that the amount of $4,200 paid by petitioner to its general manager was a gift and not compensation for services rendered, and that the amount claimed as a deduction for repairs to rental property was a capital expenditure or at least a greater portion of the amount claimed represented the cost of additions and betterments and the evidence does not justify an allocation as between repairs and permanent improvements.

FINDINGS OF FACT.

Petitioner is a Massachusetts corporation engaged in the business of bleaching, dyeing and printing cotton goods with principal office at Boston. During the taxable year 1919 the petitioner was affiliated with the Asbestos Fabric Co., Ltd., and the Glenwood Works, corporations with principal offices at Boston, and the deficiency here involved was determined upon the basis of the consolidated net income and invested capital of these three corporations. During the year 1919 and for 24 years prior thereto, petitioner had in its employ one George H. Perkins, who was also during the taxable year and for several years prior thereto, a stockholder. The principal stockholders of the petitioner during the year 1919 were as follows:

|  | Preferred | Common |  | Preferred | Common |
|---|---|---|---|---|---|
|  | *Shares* | *Shares* |  | *Shares* | *Shares* |
| Estate of Joseph Woods | 796 | 270 | Joseph F. Woods | 845 | 420 |
| Arthur H. Woods | 837 | 301 | Herbert Woods | 260 | 381 |
| James H. Woods | 790 | 322 | George H. Perkins | 323 | 109 |

A few shares were held by other employees of petitioner. Arthur, James, Joseph and Herbert Woods were sons of Joseph Woods, deceased. The preferred stock paid 6 per cent dividends and had equal voting rights with the common stock, and dividends were also paid upon the common stock. George H. Perkins was general manager of the entire business and in active charge of the business of petitioner. He was also chairman of the board of directors and president of the Glenwood Works, a subsidiary of petitioner. His

fixed salary during the year 1919 was $12,000. During 1919 the total dividends paid upon the preferred and common stock to the stockholders of petitioner, above mentioned, follows:

| | | | |
|---|---|---|---|
| Estate of Joseph Woods | $5,628 | Joseph Woods | $7,290 |
| Arthur H. Woods | 6,123 | Herbert Woods | 5,883 |
| James H. Woods | 6,225 | George H. Perkins | 2,277 |

Arthur Woods gave only a very small portion of his time to the business. He was engaged primarily in other pursuits. James H. Woods gave none of his time to the affairs of the corporation other than to attend directors' meetings. Joseph Woods gave all of his time to the attention of petitioner's business at Boston, and Herbert Woods was actively engaged in looking after the affairs of petitioner at its New York office. Arthur Woods was paid no salary; James H. Woods was paid a salary of $1,500; Joseph Woods was paid a salary of $10,000, and Herbert Woods was paid a salary of $11,500. During the year 1919 the directors, who were the individuals hereinbefore mentioned, discussed the matter of paying George H. Perkins additional compensation for that year and decided that in view of the services being rendered by him he should receive a bonus or additional compensation of $4,200 for the year 1919. In authorizing the additional compensation for Perkins for the taxable year, the directors and officers of the petitioner desired to avoid establishing a precedent of allowing additional compensation or bonuses to employees by a resolution about to be adopted, so they authorized the compensation to Perkins by resolution adopted February 19, 1919, in the following language:

It was moved and voted that the Directors for themselves and in the name of the principal stockholders, express their thanks to Mr. George H. Perkins and that they ask him to accept four thousand two hundred dollars ($4,200.00) as a token of their appreciation of his conduct of the business; this sum to form no part of any present or future salary and distribution which may be voted and paid.

The $4,200 was paid to Perkins during the taxable year and was charged upon the books and deducted by the corporation as a business expense. The amount was specifically intended as additional compensation. Perkins reported the amount as income in his individual income-tax return for the year 1919 as salary. For the year 1920 the directors paid Perkins the amount of $4,200 additional compensation for services rendered during that year, which was authorized by a resolution the same as the resolution above mentioned. The total amount of $16,200 paid Perkins in the year 1919 constituted no more than reasonable compensation for services actually rendered by him.

· For several years prior to 1919, petitioner had been obtaining its water supply from a lake located upon a 21-acre tract of land near its plant. In 1919, in order to avoid being deprived of its available water supply, petitioner purchased this tract of land and lake for $21,000. The lake practically covered the entire acreage. The only building upon the property purchased was an ancient colonial residence of wood with stone foundation containing eight rooms and cellar. This building was more than 100 years old and was in a very dilapidated condition although it was being occupied at the time by two families. The house was really unsafe due to its dilapidated condition, extreme age, and neglect. Many stones had fallen out of the foundation walls, the cellar had only a dirt floor, window casings had rotted away and 50 per cent of the window glass was missing, the cellar stairs had completely rotted and had to be replaced, floor timbers were in dangerous condition due to decay, and had to be replaced. Certain of the first-floor beams had completely broken down and a portion of these rotten beams had fallen through and were resting on the cellar floor. Practically all window sills had completely decayed; almost all the plastering which had been placed throughout the interior of the house had fallen off. The exterior and interior of the house all lacked paint and wall paper. The ceilings were in bad condition, the floor in the hallway was gone, as well as a considerable portion of the stairway leading to the second floor. The stone chimney was practically without foundation; there were large openings in the chimney from top to bottom, the hearths had fallen through and had to be rebuilt. The roof timbers had decayed and sagged; there was practically no roof on the building. The house contained an unfinished attic. Many of the clapboards were off on the outside walls and others were badly rotted. The house contained no plumbing and no light nor heating system. The ancient structure was in fact such a complete wreck that one of petitioner's witnesses stated that "It was a wonderful thing that it ever stood up." Petitioner had considerable doubt at first as to whether the cost of attempting to rehabilitate the house would be at all justified. The work was finally undertaken in the year 1919 under the direction of a man employed by petitioner for the purpose and continued for about six months. The work of practically rebuilding the house and constructing a four-room brick addition thereto was completed in the year 1919 at a total cost of $11,029.10. There was no general contractor for the work. Petitioner purchased all necessary materials and supplies, and paid for the labor by the day. In the process of reconditioning the house the work necessary to remedy the conditions hereinbefore mentioned was done. This involved the complete replacement of much of the original construc-

tion, including window casings, frames and glass, floor beams, floor boards, new stairways, plastering, and an entirely new roof of a more expensive and lasting character. A new concrete floor was constructed in the basement. The attic was completely finished with new flooring where none had been before. In addition to the above complete plumbing and heating systems were installed throughout the house, including the construction of two complete bathrooms. A complete steam or hot water system was installed in the house, including two boilers, all of which was new material. Electric light, including fixtures, was also added.

Petitioner divided the house into two apartments with separate kitchens. In so doing a new brick addition containing four rooms was added to the structure making a building of twelve rooms and basement. The yard was graded, cement and gravel walks were laid, and a brick retaining wall along the street was constructed. The house was painted outside and painted, calcimined and papered throughout its interior. Columns were added in the basement for the support of the first floor.

The cost of this work was not segregated upon petitioner's books as between repairs and additions or new construction so as to indicate that portion which might be classified as repairs and that portion which might be classified as additions and betterments. About six months after the completion of the work a rough estimate was made by one of petitioner's officers "without having anything accurate to go on"; after considering the entire cost of lumber and materials he concluded to treat one-half of the total cost as repairs and one-half as a capital expenditure. This was done and $5,514.10 was charged to expense and deducted from gross income in the return for 1919. The balance was charged to capital account. At least one-half of the total amount expended was for new material.

### OPINION.

LITTLETON: We think the claim of the petitioner that the item of $4,200 was a proper deduction as compensation for services rendered is correct. Two of petitioner's officers and directors testified fully concerning this item and we are satisfied from this evidence that the amount was allowed and paid as additional compensation for services and was a proper deduction as an ordinary and necessary business expense. The language of the resolution authorizing the additional compensation, that the same should "form no part of any present or future salary and distribution which may be voted and paid" was intended to prevent the establishment of a precedent in the matter of paying bonuses or additional compensation to employees. The Commissioner erred in holding that the amount in question was a gift.

The Board can not agree with petitioner's claim that one-half of the amount expended in practically reconstructing the house located upon the land purchased in 1919 was deductible as an ordinary and necessary expense for the taxable year. The house was rented at the time petitioner purchased it and petitioner continued to rent it after the improvements had been made. So much new material was purchased and used and so many additions and improvements were made to the old house, other than in the construction of the new brick addition thereto, that it appears evident that the greater portion of the total cost represented an " amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Section 235 of the Revenue Act of 1918. We have insufficient evidence to show the cost of the new addition of four rooms to the old house and the evidence submitted is insufficient to enable the Board to make an intelligent allocation of the remaining expenditures on the old house and the grounds as between repairs, and permanent improvements and betterments. Much of the work, consisting of replacements and renewals, had a life of several years and the cost thereof should be returned to petitioner through the annual allowance for exhaustion, wear and tear. The Board does not feel justified from the meager evidence in hazarding a guess as to what portion, if any, of the total amount claimed might be classified as an ordinary and necessary business expense. We, therefore, affirm the Commissioner in this regard.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by SMITH and LOVE.